liSULLIVAN, Judge.
Louisiana Farm Bureau Mutual Insurance Company (Farm Bureau) sued its insured, John G. Thompson, III, for reimbursement of $44,001.23 in insurance proceeds it paid for fire damage to a convenience store owned by Mr. Thompson. He had leased the store to E-Z Serve, Incorporated, which in turn subleased the store to Jerry Gunn, who was operating the store at the time of the fire.
In its petition, Farm Bureau alleged that Mr. Thompson violated the subrogation agreement he executed in favor of Farm Bureau by having the store completely repaired by E-Z Serve, his lessee. Farm Bureau maintained that Mr. Thompson was thereby unjustly enriched for keeping the insurance proceeds and benefitting from the Rrepair at no cost to him. Mr. Thompson denied that he violated the subrogation agreement and that he was unjustly enriched.
At the close of trial, the trial court ruled that Mr. Thompson violated the subrogation agreement, resulting in his unjust enrichment because he accepted both Farm Bureau’s insurance proceeds and the repairs made by E-Z Serve. The trial court rendered judgment in favor of Farm Bureau and against Mr. Thompson for $44,001.23 plus *1099 legal interest and costs. Mr. Thompson appeals.
After reviewing the record, we conclude that the trial court erred in finding that Mr. Thompson violated the subrogation agreement and that he was unjustly enriched. Accordingly, we reverse.
FACTS
Mr. Thompson owns the building that is operated as a convenience store located at the corner of Louisiana Highway 28 and Heyman Lane in Alexandria, Louisiana. Mr. Thompson obtained fire damage insurance coverage for the building from Farm Bureau.
On May 21,1988, Mr. Thompson leased the premises to Speedy Bee, Incorporated. The lease, in paragraph 6(B), required the lessee to acquire fire and extended coverage insurance in an amount necessary to replace and rebuild the premises, with coverage of not less than $100,000.00. The lease also required that the loss payable clause of the policy be made payable to Mr. Thompson. Additionally, paragraph 10(a) required the lessee to make “all major structural repairs[.]”
On April 5, 1989, by a notarial act captioned “AMENDMENT OF LEASE,” E-Z Serve was substituted as the lessee in place of Speedy Bee. At some point thereafter, EZ Serve subleased the premises to Mr. Gunn.
|3The fire occurred on April 15, 1995. Six days later, Mr. Thompson, through his attorney, sent a demand letter to E-Z Serve. Mr. Thompson demanded that E-Z Serve commence the necessary work to repair the store and restore it to its pre-fire condition.
On May 12, 1995, Farm Bureau, through its claims adjuster Michael Pate, issued a draft payable to Mr. Thompson in the amount of $44,001.23, constituting the amount of the loss less Mr. Thompson’s $500.00 deductible under the policy. In exchange for the proceeds, Mr. Thompson executed a subrogation agreement, which provided pertinently:
In consideration of and to the extent of said payment the undersigned hereby assigns the transfers and subrogates to the said Company all rights, claims, demands and interest which the undersigned may have against any third party through the occurrence of such loss and authorizes said Company to sue, compromise or settle in the name of the undersigned or otherwise all such claims and to execute and sign releases arid acquittances in the name of the undersigned.
This subrogation agreement was executed in compliance with the subrogation provision of the Farm Bureau policy, which read:
SECTIONS I & II — GENERAL'CONDITIONS
[[Image here]]
F. SUBROGATION
1. In the event of any payment under this policy, the Company shall be sub-rogated to all the insured’s rights of recovery against any person or organization' and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights.
2. The Company shall riot be bound to pay any loss if the insured has impaired any right of recovery for loss; however, it is agreed that:
(a) as respects property while on the premises of the insured, loss prior to loss, and such release |4shaII not affect the right of the insured to recover hereunder, and
(b) as respects property in transit, accept such bills of lading, receipts or contracts of transportation as are ordinarily issued by carriers containing a limitation as to the value of such goods or merchandise.
At the time of Farm Bureau’s payment to Mr. Thompson, no repairs had been made to the building.
Mr. Pate testified that, sometime after giving Mr. Thompson the draft and having Mr. Thompson execute the subrogation agreement, he obtained a copy of the lease between Mr. Thompson and Speedy Bee and a copy of the amendment substituting E-Z Serve as lessee. Mr. Pate said that he for *1100 warded these documents to Farm Bureau’s subrogation department and did not pursue the subrogation claim himself. Mr. Pate explained that, when he became aware that the building had been repaired, he spoke to Mr. Thompson, who told him that E-Z Serve had paid for the repairs. He then sent a demand letter to Mr. Thompson seeking reimbursement of the insurance proceeds paid by Farm Bureau.
Mr. Pate acknowledged that, had he known E-Z Serve would repair the building, Farm Bureau would have still been obligated to pay Mr. Thompson for his loss under the Farm Bureau policy. However, he also said that he would have halted the claim process prior to payment to investigate further had he known of E-Z Serve’s obligation to repair. He also conceded that the Farm Bureau policy did not require Mr. Thompson to use the insurance money to make repairs to the building.
Mr. Thompson testified that, by signing the subrogation agreement, he assumed Farm Bureau would pursue an action against Mr. Gunn, whom he suspected was responsible for starting the fire. He thought that, by executing the subrogation |Bagreement, he would be helping Farm Bureau recoup its money from the responsible party. He said that he received no money from E-Z Serve, Gunn, or any insurance company besides Farm Bureau.
The trial court rendered oral reasons for judgment as follows:
[I]t is the ruling of this Court that the defendant in this case, Mr. Thompson, violated his subrogation clause of his contract when he made, or when the lessee paid for the repairs that were done to the building after he had already received payment for same. For the defendant to retain these funds would constitute unjust enrichment.
Further reasoning for the ruling of the Court to that effect is that E-Z Serve and its insurer, Warsaw (sic) Insurance Company, made complete repairs to the convenience store. Mr. Thompson did not have to contribute any sums whatsoever toward the repair of his building.
Mr. Thompson’s relationship with Farm Bureau Mutual Insurance Company was protected for proprietary interest in the building. Sublessee (sic) had a duty, as a result of the lease, to also have insurance to repair — to make any repairs to that building, which he did. But the subrogation agreement between the insured and his insurer must be given the weight that it deserves. And Farm Bureau acted in good faith and in a timely manner, because it had no duty to check out the insurer of the lessee or the sublessee. But to make sure that the defendant in this case, Mr. Thompson, was made whole as quickly as possible, but because the sublessee (sic) responded in an adequate time and made those repairs, those funds, according to the reasoning of this Court, were given to the initial insurer (sic), the defendant, Mr. Thompson, in trust so that he would suffer no loss due to the lack of funds to repair the damage to his building.
LAW

Subrogation

“Subrogation is the substitution of one person to the rights of another.” La.Civ. Code art. 1825. This case presents a situation involving a conventional subrogation by the obligee (Mr. Thompson) who received performance of the obligation from a third person (Farm Bureau). See La.Civ.Code art. 1827. A subrogated insurer has the same right as its insured to pursue a direct action against pliability insurers of third parties. Audubon Ins. Co. v. Farr, 453 So.2d 232 (La.1984). It can also sue the potentially liable third parties.
In the Audubon case, Ms. Paul’s home was damaged by a vehicle driven by Mr. Farr. Ms. Paul received a $4,412.00 check from her homeowners insurer, Audubon, and executed a subrogation receipt in exchange for the payment. After subrogating her rights, Ms. Paul then accepted a $4,000.00 cheek from Allstate Insurance Company, Mr. Farr’s automobile liability insurer. At the time, Allstate was not aware that Audubon had previously acquired Ms. Paul’s rights via subrogation. Audubon sued Mr. Farr and Allstate, who then third-partied Ms. Paul. The trial court rendered judgment in favor *1101 of Audubon and against Mr. Farr and Allstate for $4,412.00 and in favor of Mr. Farr and Allstate and against Ms. Paul for $4,000.00. Mr. Farr and Allstate appealed, and the court of appeal affirmed. The supreme court reversed, finding that Ms. Paul violated the Audubon subrogation agreement by settling with Allstate and receiving its cheek after having transferred her rights to Audubon. The supreme court reasoned that Audubon’s recourse was against its insured, Ms. Paul, for violation of the subrogation agreement and not against Allstate, which acted in good faith in settling with Ms. Paul.
While the case sub judice is similar to Audubon, it does have distinguishing characteristics. First, the only action taken by Mr. Thompson with regard to. exercising his rights was to send one demand letter to E-Z Serve before he accepted Farm Bureau’s draft and executed the subrogation agreement. When the subrogation was executed, no action had been taken by E-Z Serve or its insurer to repair the premises or to pay Mr. Thompson for the damage. From that point forward, Farm Bureau had the absolute right to pursue E-Z Serve and/or Mr. Gunn or their insurer(s) to enforce Mr: Thompson’s rights under the lease. Farm Bureau did nothing in this regard. |7Mr. Thompson’s demand letter, sent after the “loss” but before the subrogation, did not prejudice or impair Farm Bureau’s right to seek reimbursement from a third party.
Second, Mr. Thompson did not receive any payment from E-Z Serve, Mr. Gunn, or any of their insurers. He did not execute a settlement or compromise with any of them, either. See La.Civ.Code art. 3071.
The issue, then, is whether Mr. Thompson violated the subrogation agreement by remaining silent and accepting the benefit of the lessee’s payment of the repairs. In other words, is the complete repair of the building at no cost to Mr. Thompson the equivalent of Ms. Paul’s acceptance of Allstate’s check after she had subrogated all of her rights to Audubon? We think not. After Mr. Thompson signed the subrogation agreement, Farm Bureau’s acquired rights were still completely viable since no other payment had yet been made to Mr. Thompson and no repair work had commenced. Farm. Bureau could have asserted those rights but did not. In the meantime, E-Z Serve repaired the building as it was obligated to do under the lease.
Under these circumstances, we conclude that Mr. Thompson did not violate the subro-gation agreement through his passive “acceptance” of the repair work. The trial court erred in concluding otherwise.

Unjust Enrichment

An action for unjust enrichment requires proof of five elements:
(1) an enrichment of the defendant;
(2) an impoverishment of the plaintiff; ■
(3) causation between the enrichment and the impoverishment;
(4) an absence of justification or cause for either the enrichment or the impoverishment; and
(5) no other available remedy at law.
Edwards v. Conforto, 636 So.2d 901 (La.1993).
In the present case, the first three elements are easily met. Mr. Thompson was enriched, Farm Bureau was impoverished, and causation is self-evident by the direct payment nature of the transaction. However, the final two elements are not present in this case. As in Edwards, the justification or cause of the plaintiff’s enrichment was the contract between the parties. In exchange for Mr. Thompson’s payment of premiums, Farm Bureau agreed to pay for any loss caused by fire under the terms of the policy. It was contractually obligated to do so. Additionally, Farm Bureau had another remedy available at law. It could have expeditiously asserted the rights subrogated to it by Mr. Thompson, but did not do so. The existence of an express or implied contractual claim precludes application of the unjust enrichment theory because the potential claim is a legal remedy available to the impoverishee. Scott v. Wesley, 589 So.2d 26 (La.App. 1 Cir.1991), citing Morphy, Makofsky, & Masson, Inc. v. Canal Place 2000, 538 So.2d 569 (La.1989). The relative difficulty involved in pursuing an existing legal remedy, which may even be impossible to collect upon, is not *1102 a valid reason to invoke unjust enrichment. Id.
We conclude that Mr. Thompson was not unjustly enriched. He simply benefited as an obligee of two separate contracts which imposed two separate duties on the respective obligors.
DECREE
For these reasons, we reverse the judgment of the trial court. All costs of these proceedings are taxed against plaintiff-appel-lee, Louisiana Farm Bureau Insurance Company.
REVERSED AND RENDERED.