[iMARCUS, Justice. *
John Thompson III (Thompson), a resident of Alexandria, owned certain commercial real estate in that city and purchased fire insurance on the property from Louisiana Farm Bureau Mutual Insurance Company (Farm Bureau). On April 15, 1995, a fire occurred that caused substantial damage to the insured premises. A representative of Farm Bureau visited the site with Thompson shortly after the fire, adjusted the loss, and issued a draft for $44,001.23 on May 12, 1995.[1] In exchange for the insurance proceeds, Thompson executed an agreement whereby he assigned, transferred, and subrogated to Farm Bureau all rights he might have against any party in connection with the loss.
At the time of the fire, the property was leased to E-Z Serve, Incorporated, which had subleased the site to Jerry Gunn, who was operating it as a convenience store. A written lease in effect between Thompson and E-Z Serve required E-Z Serve to obtain fire insurance on the premises and to make Thompson the loss payee as to any fire damage proceeds. It also required Thompson to use the proceeds of the insurance secured by the lessee to make the necessary fire damage repairs to the property. The record sug-gestsjjthat E-Z Serve fulfilled its contractual obligation to secure fire coverage on the building by purchasing such coverage from Wausau Insurance Company.[2]
On April 21, 1995, six days after the fire and after Thompson commenced adjustment of the fire loss with Farm Bureau, Thompson made written demand on E-Z Serve to take action to restore the building to its pre-fire condition, referring E-Z Serve to the lease provision requiring that it procure fire insurance in amounts necessary to repair the property. However, when Thompson accepted the Farm Bureau policy proceeds in May, 1995, he did not disclose to Farm Bureau’s representative that he had already made demand on E-Z Serve under the terms of the lease or that he had indicated that he would accept repairs performed by the lessee in satisfaction of the lessee’s obligation to have him named as loss payee on a fire loss policy. No repairs had been commenced at the time Farm Bureau’s payment was made.
Some time after Farm Bureau’s insurance payment to Thompson on May 12, 1995, E-Z Serve completed the repairs pursuant to *429 Thompson’s demand. There is no evidence that E-Z Serve knew at the time it received Thompson’s demand for repairs that Thompson had also made demand for payment for the fire damage on Farm Bureau. Nor is there any evidence that E-Z Serve had notice at the time repairs were made that Thompson had already received payment from Farm Bureau and assigned to Farm Bureau all his rights in connection with the fire loss.
Eventually Farm Bureau learned that the fire loss had been repaired through the efforts of E-Z Serve, at no cost to Thompson, pursuant to the lease and Thompson’s demands. Farm RBureau sought reimbursement for the insurance proceeds paid to Thompson under its policy. When Thompson refused to reimburse the funds, Farm Bureau filed suit on April 4, 1996, alleging that Thompson was unjustly enriched by receiving both the insurance proceeds and the value of repairs made by E-Z Serve and that it was entitled to recoup the policy proceeds it had paid due to Thompson’s receipt of the value of rights he had assigned to Farm Bureau.
After trial on the merits, judgment was rendered in favor of Farm Bureau ordering reimbursement of the fire insurance proceeds it had paid. The trial judge reasoned that Farm Bureau in good faith timely paid its insurance proceeds after receipt of a proof of loss for the fire damages. However, since the lessee timely responded to Thompson’s demands by making repairs of the same damage pursuant to its lease obligations, Thompson held the funds originally paid by Farm Bureau in trust. The trial judge specifically held that the agreement assigning and subrogating Thompson’s rights to Farm Bureau “must be given the weight it deserves.” Thompson appealed. The court of appeal reversed, concluding that Thompson was an obligee under two separate contracts, a contract of insurance and a contract of lease. The court of appeal held that he was not unjustly enriched, had not violated the subrogation and assignment agreement, and was entitled to keep the benefit of both contracts. [3] We granted certiorari to review the correctness of that decision.[4]
The sole issue before us for review is whether Thompson is entitled to retain the policy proceeds paid to him by Farm Bureau;
The resolution of the issue presented for our consideration turns on the effect of the conventional assignment of rights made by Thompson to Farm Bureau. The court of appeal was correct |4in determining that Thompson was the obligee on two separate contracts. He paid premiums to Farm Bureau for the fire loss coverage pursuant to which the Farm Bureau proceeds were paid. He also gave consideration in the negotiation of the lease with E-Z Serve for .the obligation of the lessee to procure fire insurance coverage on the same property with Thompson named as loss payee and designated as a named insured on the policy. If there were no other agreements in effect between the parties, Thompson might be entitled to retain the benefits available under both, contracts.[5] However, when Thompson purchased the Farm Bureau policy and accepted the proceeds payable thereunder, he agreed to additional terms. The Farm Bureau policy at issue provided:
This Company may require from the insured an assignment of all right of recovery against any party for loss to the extent that payment therefor is made by this Company.
In accordance with this policy provision Thompson executed a written agreement providing:
In consideration of and to the extent of said payment the undersigned assigns, the [sic] transfers and subrogates to the said Company all rights, claims, demands and interest which the undersigned may have *430 against any third party through the occurrence of such loss and authorizes said company to sue, compromise or settle in the name of the undersigned or otherwise all such claims and to execute and sign releases and acquitances in the name of the undersigned. [Emphasis added].
The trial judge did not err in concluding that upon execution of this assignment, Farm Bureau became the assignee of all of Thompson’s rights triggered by the occurrence of the fire loss, including any rights Thompson had under the lease affecting the damaged property.
IgThe lease in effect between Thompson and E-Z Serve contained provisions specific to the occurrence of a fire loss.[6] Section 6(b) of the lease stipulated:
Lessee shall carry fire and extended coverage insurance on the leased premises at all times, in such amount as is necessary to replace and rebuild the leased premises in the event of total loss. The amount of said insurance shall be fixed from time to time by mutual agreement between the Lessor and Lessee, but in no event shall it be less than the sum of $100,000. The loss payable clause of said policy shall be payable to Lessor, and he shall be a named insured, as his interest may appear. The original of said insurance policy shall be delivered to Lessor. [Emphasis added].
Accordingly, under the provisions of the lease, Thompson had the right to receive payment for the fire loss from the insurance policy procured in his name by E-Z Serve.[7] When Thompson assigned Rhis rights in connection with the fire loss to Farm Bureau, Farm Bureau became entitled to receive the funds payable under the lessee’s covenant to provide fire insurance. However, unknown to Farm Bureau, Thompson had already indicated to the debtor (E-Z Serve) that he would accept repairs made directly by the debtor in lieu of the cash payment to which he was entitled as a loss payee on the separate policy required under the lease.[8]
It is clear under the facts and circumstances of this case that Farm Bureau cannot now enforce the rights assigned to it against E-Z Serve, which rendered payment to Thompson without notice of the assignment of Thompson’s rights. La. Civ.Code art. 2644 explains:
When the debtor, without knowledge or notice of the assignment, renders performance to the assignor, such performance extinguishes the obligation of the debtor *431 and is effective against the assignee and third persons.
In his demand letter dated April 21, 1995, Thompson referred E-Z Serve to its lease obligation to provide insurance, naming him as loss payee, in such amounts as necessary to replace and rebuild the property. However, Thompson also indicated that he would accept, in lieu of payment, the performance of the fire loss repairs directly by E-Z Serve. E-Z Serve was entitled to rely on its creditor’s agreement to substitute one form of performance of its lease obligations with another form of performance. A debtor who, without notice of an assignment, renders payment of any kind which is accepted by his original creditor is fully discharged from the debt as to all parties. Johnson v. Boice, 40 La.Ann. 273, 4 So. 163 (1888); Wax Lumber Co. v. Ludeau, 5 So.2d 157 (La.App. 1st Cir.1941).
However, although the debtor who has paid his creditor in good faith and without notice is protected from claims made by an ^assignee, the law provides that the assignee who has thus been deprived of the value of the assignment can recoup same from the assignor who has received the benefit in his stead. The general rule explained at 6 Am. Jur.2d Assignments § 105 provides:
... one who has made a valid assignment of a claim has no right thereafter, unless authorized by the assignee, to receive payment from the debtor. If he does receive payment and fails to turn it over to the assignee, the assignee may hold him liable.
The rule is similarly explained in 6A C.J.S. Assignments § 90:
... if the assignor proceeds to collect the sum due on an assigned chose, the moneys so coming into his hands are regarded as trust funds belonging to the assignee, who may recover the same either in an action for money had and received or in tort for conversion.
In keeping with this principle, Farm Bureau is entitled to seek from Thompson the funds it could have received pursuant to the lease had Thompson not demanded and accepted the repairs procured directly by the tenant. In the absence of any evidence to the contrary, we assume that the fire loss payment made pursuant to the loss payee clause of the policy required under the lease would have been the same as that made under the Farm Bureau policy. Farm Bureau is entitled to recoup from Thompson $44,001.23, the value of the rights assigned to Farm Bureau but received by Thompson from the debtor.
We reached a similar result in Audubon Ins. Co. v. Farr, 453 So.2d 232 (La.1984). In that ease, a property owner accepted payment from Audubon Insurance Company, her home owner’s insurance carrier, for damage to her property. She executed an agreement transferring to Audubon all rights she might have against any third party in connection with the loss. Subsequently, she accepted from a third party debtor payment for the loss. At the time of such payment the third party debtor had no notice that the property owner had already subrogated her rights to her insurer in exchange for payment under the Audubon policy. We held that payment without Ignotice of the prior assignment barred suit against the debtor.[9] We further held that the remedy of the insurer whose insured has collected twice for the same damage under such circumstances is against the insured, who holds the excess recovery as trustee. Audubon, 453 So.2d at 235.
While the court of appeal recognized the controlling nature of our decision in Audubon, it distinguished Audubon on the ground *432 that the acceptance of repairs by Thompson was merely passive. Thompson likewise defends against recovery by Farm Bureau by insisting that he received no cash payments from anyone other than Farm Bureau for the fire loss. Thompson apparently concedes that if he had received cash pursuant to a fire policy secured by the lessee, he would have to return the proceeds received from Farm Bureau.
In our view, under the facts of this case, the distinction drawn by Thompson and the court of appeal is a distinction without a difference. First, where the debtor without notice of a prior assignment makes payment to the assignor rather than the assignee, the assignee is entitled to recoup same from the assignor, regardless of characterization of the assignor’s acceptance as passive. The law so provides because the assignor is then in possession of value that belongs to the assignee pursuant to the assignment agreement. Moreover, in this case Thompson solicited the repairs from the lessee and indicated that he would accept them in lieu of his right to demand cash payment as loss | gpayee under the policy E-Z Serve was obligated to secure under the lease. Thompson cannot defeat Farm Bureau’s rights through the device of demanding and then accepting from the debtor a performance in kind in substitution for the original obligation it assigned.[10]
For the foregoing reasons, we conclude that under the particular facts and circumstances of this case, Farm Bureau is entitled to recoup the policy proceeds it paid to Thompson. The court of appeal erred in concluding otherwise. Accordingly, we must reverse.
DECREE
For the reasons assigned, the judgment of the court of appeal is reversed and the judgment of the trial court is reinstated. All costs of appeal are assessed against John G. Thompson, III.

 Victory, J. not on panel. Rule IV, Part 2, § 3.

. This payment represented the amount of the loss, less the $500.00 deductible provided in the insured’s policy.

. Although neither the Wausau policy nor any documentary evidence of payment of the fire loss by Wausau were introduced into the record in this case, the oral reasons for judgment of the trial judge reflect his conclusion based on pleadings filed by the parties that Wausau and E-Z Serve had funded the repairs. He found: "... E-Z Serve and its insurer, Warsaw [sic] Insurance Company, made complete repairs to the convenience store.” The record also suggests that these parties, who did not testify at trial, pursued a separate suit against Jerry Gunn to recoup the funds expended by them.

. 97-942 (La.App. 3d Cir.2/4/98); 706 So.2d 1097.

. 98-C-0520 (La.5/1/98); - So.2d-, 1998 WL 231430.

. Note however, that even in the absence of a conventional subrogation and assignment, under certain circumstances an insurer who pays a property damage claim is entitled to be legally subrogated to the insured’s contractual rights. Aetna Ins. Co. v. Naquin, 488 So.2d 950 (La.1986).

. The lease contained a separate provision requiring the lessee to make needed structural repairs. However, it is clear from a reading of the entire lease agreement that the obligations of the parties in the case of a fire loss were controlled by the specific provisions related to such a loss. In the event of a fire loss, the lessor was obligated to have fire loss repairs made out of the proceeds of the insurance purchased by the lessee but payable to him.

. Even if E-Z Serve had breached its obligation to procure such insurance, we believe it would nevertheless have been liable to pay the amount of the fire loss as damages for breach of the lease covenant. Citizens Finance Co. of Amite v. Buchanan, 261 La. 1022, 261 So.2d 652 (1972). We reject Thompson's contention in oral argument that in the event of breach of the insurance clause, the only remedies available under the lease were termination of the lease or acceleration of the rents. The general rule of law supports the principle that the measure of damages for breach of a lessee's covenant to insure is the amount that would have been due under the policy if it had been obtained. 49 Am.Jur.2d Landlord and Tenant §§ 477-480. See also Jacksonville, M., P. Ry. & Nav. Co. v. Hooper, 160 U.S. 514, 528, 16 S.Ct. 379, 40 L.Ed. 515 (1896); American Trust Co. v. Truck Ins. Exchange, 147 Cal.App.2d 395, 305 P.2d 73 (Cal.App.1957); Benton v. Alcazar Hotel Co., 352 Mo. 836, 180 S.W.2d 33 (Mo.1944); Robinson v. Janay, 105 N.J.Super. 585, 253 A.2d 816 (N.J.App.Div.1969); Marconi Wireless Telegraph Co. of America v. Universal Transp. Co., 194 A.D. 272, 185 N.Y.S. 65 (N.Y.App.1920); Franck v. Stout, 139 Wis. 223, 120 N.W. 867 (Wis.1909). However, we need not determine what would have happened in the event Farm Bureau had attempted to enforce its assigned rights and E-Z Serve had objected to payment of damages for breach of the insurance clause. First, there is no evidence that E-Z Serve breached the covenant to insure. Even if it had, E-Z Serve raised no such defense when it was called upon to comply with the lease. E-Z Serve satisfied its lease obligations and rendered performance by repairing the premises, either with money it received from its insurer or with its own funds.

.Thompson has produced no evidence to substantiate a claim that the repairs made by E-Z Serve did not fully restore the building to its pre-fire condition.

. In Audubon, as in this case, the property owner did not execute a written release in favor of the debtor. We held, however, that the property owner had accepted the payment and reached an accord and satisfaction with the tortfeasor who paid without notice of the earlier subrogation, thereby extinguishing the debt. Here the principles of accord and satisfaction are not applicable because we are not dealing with a disputed claim. Lessee had an undisputed obligation to have Thompson named as loss payee on a fire policy under Section 6(b) of the lease. Thompson solicited and accepted performance in kind of the repairs to the property in performance of that obligation. Performance, rather than settlement, extinguished the lessee’s obligation in this case. La. Civ.Code art. 1854. The manner of extinguishment of the obligation, however, is immaterial. Farm Bureau's rights against E-Z Serve have been cut off by the lessee’s performance in favor of Thompson.

. Having determined that Farm Bureau has a legal remedy in this case, it is unnecessary for us to reach the issue of whether Thompson's re tention of the Farm Bureau policy proceeds and the equivalent value of the repairs performed by the lessee constituted unjust enrichment.