United States Court of Appeals
Fifth Circuit

**F I L E D**

June 30, 2004

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 03-30570

DRS BETHEA, MOUSTOUKAS AND WEAVER LLC; MORRISON C BETHEA, MD, A
Professional Medical Corporation; NICK M MOUSTOUKAS, MD; MICHAEL T
WEAVER, MD; VICTOR E TEDESCO, IV, MD; JARED Y GILMORE, III, MD; and
acting on behalf of all others similarly situated,

                                        Plaintiffs - Appellants,

                    versus

ST PAUL GUARDIAN INSURANCE CO; ET AL,

                                        Defendants,

ST PAUL GUARDIAN INSURANCE CO; ST PAUL FIRE & MARINE INSURANCE CO,
in its own corporate capacity and as successor in interest to the
St Paul Insurance Company, ST PAUL MEDICAL LIABILITY INSURANCE
COMPANY,

                                        Defendants - Appellees.

Appeals from the United States District Court
for the Eastern District of Louisiana

Before GARWOOD, HIGGINBOTHAM, and SMITH, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Plaintiffs, Drs. Bethea, Moustoukas and Weaver, LLC,
("Bethea") appeal the district court's decision to grant St. Paul
Guardian Insurance Company's motion to dismiss pursuant to Federal
Rule of Civil Procedure 12(b)(6). Bethea asserts that the facts
alleged in its Second Amended Complaint are sufficient to state

claims of detrimental reliance and unjust enrichment. St. Paul asserts that the insurance policy, being valid and unambiguous, precludes the possibility of any reasonable reliance on extra-contractual representations and justifies any enrichment St. Paul obtained. We agree with St. Paul and affirm the district court's dismissal with prejudice.

I

This is an insurance dispute between St. Paul Guardian Insurance Company and a putative class of previous policyholders. The medical malpractice policy at issue (1) provides that both parties have the right to non-renewal; (2) includes an integration clause that limits the way in which the policy can be modified;[1] (3) entitles the doctors to purchase tail coverage in the event of non-renewal;[2] and (4) provides tail coverage at no additional premium if a policyholder dies, becomes disabled, or retires during the life of the policy.

A few weeks after Bethea's 2002 renewal, St. Paul informed its policyholders that it was exiting the medical malpractice market. Although it would provide coverage for current policies and provide

---

[1] The integration clause provides that the policy "contains all the agreements between [Bethea] and [St. Paul] concerning this insurance. . . . This policy can only be changed by a written form included as part of the policy. This form must be signed by one of our authorized representatives."

[2] Tail coverage provides insurance for any claims based on injuries that occurred during the policy's term, but are raised after the policy has expired. Tail coverage is also referred to as a reporting endorsement.

the free tail coverage to any doctor who had been insured by St. Paul for five consecutive years and chose to retire before the policy expired, it would no longer renew medical malpractice policies. At the time of St. Paul's notice, Bethea's policy term had eleven months remaining.

Bethea, as putative class representative, alleges that through a letter explaining a policy change and St. Paul's brochures, St. Paul promised to provide free tail coverage upon the doctors' retirement,[3] and that St. Paul reneged on this promise by exiting the medical malpractice insurance market before the doctors could take advantage of the free tail coverage. Bethea alleges that they detrimentally relied on the promise, resulting in damages to them and in St. Paul's unjust enrichment.

In response, St. Paul asserts that the insurance policy at issue provides that St. Paul would provide free tail coverage in a limited set of circumstances, the relevant circumstance here being

---

[3] The letter was sent by Kevin O'Brien, a practice leader at St. Paul, to explain changes in future policies. Specifically, it stated, "If you permanently retire from all professional practice and have been insured with The St. Paul [sic] continuously for five years . . . , you will qualify for a free optional reporting endorsement. This replaces the existing qualification of 10 consecutive years of St. Paul coverage and retiring at age 55, or five continuous years of coverage, retiring at 65."

The brochures include general statements about the strength of St. Paul as an insurer and its commitment to the medical malpractice market. They state, among other things, that (1) St. Paul "will still be with you every step of the way" when needed; (2) St. Paul "has the financial wherewithal to provide whatever level of insurance protection you need"; and (3) "For a secure tomorrow, look to St. Paul today."

3

that the doctors retire while their insurance policy remained in effect. The doctors did not retire during the policy's term, so St. Paul is not required to provide the tail coverage. St. Paul disputes Bethea's allegation that the letter and the brochures provide to the contrary, and asserts that as a result of the clarity of the policy, any reliance on extra-contractual representations would be unreasonable. Finally, St. Paul asserts that the existence of an enforceable contract between the parties precludes Bethea's unjust enrichment claims as a matter of law.

The district court dismissed Bethea's Second Amended Complaint with prejudice. The court dismissed Bethea's detrimental reliance claim because, even taking Bethea's allegations as true, "there was no justifiable reliance on the part of plaintiffs that St. Paul would always provide coverage." The court based the dismissal on (1) the plain language of the policy, which provides that either party may non-renew and that free tail coverage is provided only if the policy is in effect at the time of the death, disability, or retirement; (2) the policy's integration clause, which provides that any changes must be in "a written form included as part of the policy"; and (3) La. Rev. Stat. 22:628, which provides that any change to an insurance policy must be in writing and physically made part of the policy. The court dismissed the unjust enrichment claim because a valid contract existing between the parties justified any enrichment of St. Paul.

II

4

We review the district court's Rule 12(b)(6) dismissal *de novo*.[4]  Rule 12(b)(6) allows a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted."[5]  We accept plaintiff's factual allegations as true and will not affirm a dismissal "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[6]  However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[7]

A

Article 1967 of Louisiana's Civil Code defines detrimental reliance.[8]  It provides that—

> [a] party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. . . . Reliance on a gratuitous promise made without required formalities is not reasonable.[9]

Detrimental reliance requires (1) a representation by conduct or

---

[4] *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 725 (5th Cir. 2002).

[5] Fed. R. Civ. P. 12(b)(6).

[6] *Blackburn v. Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).

[7] *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993).

[8] La. Civ. Code Ann. art. 1967 (2004).

[9] *Id.*

5

word, (2) justifiable reliance on the representation, and (3) a change in position to the plaintiff's detriment as a result of the reliance.[10] The doctrine is "designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence."[11] The doctrine usually functions when no written contract or an unenforceable contract exists between the parties.[12]

Whether a plaintiff reasonably relied on a promise is generally a fact-bound determination.[13] However, Louisiana law recognizes certain situations where a plaintiff's reliance on a promise is unreasonable as a matter of law.[14] An unambiguous contract may be interpreted as a matter of law,[15] and, applying

---

[10] *Babkow v. Morris Bart, P.L.C.*, 726 So. 2d 423, 427 (La. Ct. App. 1998).

[11] *Id.*

[12] *Jackson v. Lare*, 779 So. 2d 808, 814 n.1 (La. Ct. App. 2000).

[13] *Babkow*, 726 So. 2d at 428 (characterizing the reasonable reliance determination as "extremely fact intensive" and distinguishing precedent on the unique facts of the case).

[14] For example, a plaintiff's reliance on an oral, gratuitous promise to transfer land was held unreasonable as a matter of law because Louisiana law provides that "reliance on a gratuitous promise made without required formalities is not reasonable." *Gray v. McCormick*, 663 So. 2d 480, 486 (La. Ct. App. 1995). Considering that Louisiana law requires various formalities when transferring land, any reliance on an oral promise alone is unreasonable. *Id.*

[15] *Rutgers v. Martin Woodlands Gas Co.*, 974 F.2d 659, 661 (5th Cir. 1992) ("Under Louisiana law, when a contract is subject to interpretation from the four corners of the instrument, without

Louisiana law, we held in *Omnitech International, Inc. v. Clorox Company* that a plaintiff's reliance on promises made outside of an unambiguous, fully-integrated agreement was unreasonable as a matter of law.[16] Omnitech brought a detrimental reliance claim against Clorox, contending that it reasonably relied on extra-contractual representations by Clorox that Clorox would not enter the insecticide market without Omnitech as a partner.[17] We rejected Omnitech's assertion because the parties' fully integrated contract defined the relationship of the parties, and any reliance on outside assurances that moved beyond the well-defined relationship was unreasonable as a matter of law.[18] We concluded that Clorox's promises "if made, were outside the scope of the fully-integrated, written agreements between Omnitech and Clorox," and we therefore "refuse[d] to look past the written terms of the agreements, and hold that the trial court did not err in finding that any reliance by Omnitech upon these representations was unreasonable as a matter of law."[19]

As in *Omnitech*, many courts have found a plaintiff's reliance

---

necessity of extrinsic evidence, interpretation of the contract is a matter of law subject to de novo review.").

[16] 11 F.3d 1316, 1330 (5th Cir. 1994).

[17] *Id*. at 1328.

[18] *Id*. at 1329–30.

[19] *Id*. at 1330.

to be unreasonable as a matter of law when the parties have a valid contract defining their rights and limiting the ways in which the contract may be modified.[20]

B

We find no error in the district court's dismissal. Bethea's allegation of reasonable reliance on the O'Brien letter and St. Paul's brochures as a promise that St. Paul would provide unconditional free tail coverage, or at least that St. Paul would renew Bethea's policy until the doctors could take advantage of the free tail coverage, is belied by the clarity of the insurance policy and the content of the documents at issue. The insurance policy, which is indisputably valid and not breached, provides that either party may non-renew at any time and that tail coverage will be provided for no additional premium only upon retirement during

---

[20] *Wardley Corp. v. Meredith Corp.*, 2004 WL 339593 at *3-4 (10th Cir. Feb. 24, 2004) (unpublished) ("[W]hen the alleged promises made are contrary to the terms of the contract, reliance on such promises would be unreasonable. Under the contract before us, [Defendant] could transfer or assign its rights and obligations. Any reliance on statements that [Defendant] would never sell, or that its obligations would continue after it assigned the obligations under the contract, would therefore have been unreasonable."); *Kirkland v. St. Elizabeth Hosp.*, 120 F. Supp. 2d 660 (N.D. Ohio 2000), *affirmed*, 34 Fed. Appx. 174 (6th Cir. 2002) (unpublished); *Kleinberg v. Radian Group, Inc.*, 240 F. Supp. 2d 260, 262 (S.D. N.Y. 2002); *Phoenix Technologies, Inc. v. TRW, Inc.*, 840 F. Supp. 1055, 1067 (E.D. Pa. 1994); *Blue Mountain Mushroom Co., Inc. v. Monterey Mushroom, Inc.*, 246 F. Supp. 2d 394 (E.D. Pa. 2002).

the policy's term.[21]   Both the contract's integration clause and Louisiana law require that any change to the policy be in written form and incorporated into the policy.  One could not reasonably rely on a renewal letter explaining policy changes and marketing brochures as a promise to provide free tail coverage without limit, especially considering that such a promise is not mentioned in the documents and would directly conflict with the policy.  Given that the insurance policy unambiguously defines the parties' rights and limits the way to alter the policy, it was unreasonable to rely on informal documents as modifying material aspects of the policy.

Relying on *Law v. Eunice*,[22] Bethea asserts that the reasonableness of its reliance is a fact question that must be determined at trial.  However, *Law* does not require a party's reliance to be determined at trial in every case.[23]  In *Law*, the parties had no written contract defining their rights and obligations; the plaintiff asserted only an oral agreement.  The court found that based on these facts, the plaintiff's reasonableness should be determined at trial.  Furthermore, Bethea's assertion ignores the many precedents we have mentioned

---

[21] The policy also provides tail coverage at no additional premium upon death or disability during the policy's term. Bethea's argument focuses solely on the right of tail coverage upon retirement.

[22] 626 So. 2d 575, 577-78 (La. Ct. App. 1993).

[23] *Id*. at 577-78.

where courts find reliance unreasonable as a matter of law. Courts have found unreasonable reliance as matter of law when a plaintiff relies on oral representations despite the law's insistence on certain formalities,[24] when a plaintiff relies on a representation that is clearly not intended to bind the defendant or induce the plaintiff into reliance,[25] and when a plaintiff relies on extra-contractual representations despite the existence of an unambiguous, fully integrated contract that provides limited ways of altering the parties' relationship.[26]

Despite Bethea's allegation of reasonable reliance on the O'Brien letter, the context and facts of the parties' relationship make any reliance on the letter unreasonable. When faced with the letter, which was included as part of a package describing St. Paul's insurance coverage, Bethea claims that it reasonably believed St. Paul would provide the free tail coverage regardless of whether a policyholder claimed it before or after the policy expired, or at least that St. Paul would continue to insure the policyholders in the future, allowing them to take advantage of the free tail coverage. Although the letter does not mention that the policyholder must retire during the policy term to be entitled to free tail coverage, the letter is clearly meant to explain

---

[24] *Gray v. McCormick*, 663 So. 2d 480, 486 (La. Ct. App. 1995).

[25] *Miller v. Loyola Univ. of New Orleans*, 829 So. 2d 1057, 1062 (La. Ct. App. 2002).

[26] *Omnitech,* 11 F.3d at 1329-30.

10

modifications in the renewal policy Bethea was considering. The insurance packet included the policy itself and a cover letter from Bethea's insurance agent instructing Bethea to read the policy and raise any concerns it may have. It is clear from the policy that (1) St. Paul may choose to non-renew at any time, (2) free tail coverage is provided only if a policyholder retires during the life of the policy, and (3) no provision is made for guaranteed free tail coverage or automatic renewal. The clarity of the policy and the informality of the letter make any reliance on the letter as significantly altering its insurance policy unreasonable.

An independent provision of the policy and Louisiana law also make any reliance unreasonable. The contract includes an integration clause stating that the "policy contains all the agreements between you and us concerning this insurance," and that it "can only be changed by a [signed] written form included as part of the policy." Similarly, Louisiana law limits the ways in which an insurance policy may be amended.[27] Bethea claims that its reliance on the letter could be reasonable despite the integration clause and § 22:628 because the letter, being in written form, signed by a St. Paul representative, and sent to Bethea, meets the

---

[27] LA. REV. STAT. ANN. § 22:628 (West 2004) ("No agreement in conflict with, modifying, or extending the coverage of any contract of insurance shall be valid unless it is in writing and physically made a part of the policy or other written evidence of insurance, or it is incorporated in the policy or other written evidence of insurance by specific reference to another policy or written evidence of insurance.").

11

clause's and the law's requirements.  Although the letter is a written form and is signed by an agent of St. Paul, it is clearly a letter explaining the new policy that Bethea purchased.  The letter refers to the renewal policy included in the packet, notes that the change in the requisite number of years replaces the previous ten-year requirement, and appears to be intended as a marketing tool to encourage policy renewal.  The letter opens, "One of the industry's broadest medical professional liability coverages has become even broader!"  Any reliance that this letter served as a formal modification to the policy was unreasonable, especially considering that the letter was included with Bethea's current policy containing provisions contrary to Bethea's interpretation of the letter.[28]

Any reliance on St. Paul's brochures was likewise unreasonable.  The brochures' informality and use of general statements of future intent, coupled with the clear policy language contradicting Bethea's interpretation, make any reliance on them unreasonable.[29]

Bethea relies on *Aker v. Sabatier*[30] for the proposition that an insurance brochure can modify an insurance policy and bind the company to provide the coverage described.  *Aker*, however, is

---

[28] *See Omnitech*, 11 F.3d at 1329-30.

[29] *Id.*

[30] 200 So. 2d 94 (La. Ct. App. 1967).

inapposite.  The plaintiff in *Aker* sued another doctor for libel and slander, and the doctor's insurance company was joined in the lawsuit.  The insurance company moved for summary judgment, claiming that the insurance policy did not cover damages resulting from libel and slander because they were not the result of "professional services rendered."  Although the policy did not expressly cover libel and slander, the company's brochure assured the policyholder that claims of libel and slander would be covered.[31]  Because the brochure directly contradicted the policy, an ambiguity was created that needed to be resolved at trial, not on summary judgment.  Further, it was not clear from the record whether the insurance company was responsible for the brochure at issue.[32]  The court reversed the summary judgment and remanded for further proceedings.

Unlike *Aker*, the facts here present no direct discrepancy between the insurance policy and the brochure.  The brochures imply that St. Paul is a strong company that will remain in the medical malpractice market for the foreseeable future, but they do not create a patent ambiguity between two definitions of coverage as in *Aker*.  Claiming that they are a strong company and implying that

---

[31] *Id*. at 97.

[32] *Id*. ("If, in fact, the brochure was issued by St. Paul and describes the coverage provided by the policy herein, we cannot see how St. Paul can how be heard to deny that such coverage is afforded thereby.").

13

they will remain in the market do not contradict the policy provision entitling either party to cancel or non-renew at any time.

On the facts of this case, Bethea could not reasonably rely on the marketing brochures as modifying the clear language of its policy. The brochures do not state that St. Paul would abandon various contractual provisions and provide free tail coverage without limitation. In light of the unambiguous contract, the integration clause, and caselaw providing that reliance on extra-contractual representations are unreasonable as a matter of law when the parties' rights and obligations are clearly defined by contract, the district court did not err in finding that Bethea could not allege reasonable reliance and dismissing the case.[33]

---

[33] Two of its arguments - that the insurance policy no longer gives St. Paul the right to non-renew because the letter and brochures modified the policy and that the policy does not allow St. Paul to non-renew without reimbursing Bethea for premiums it paid for the tail coverage - are relevant only to a breach of contract claim. Bethea has not appealed the dismissal of its breach of contract claim, however, and we need not resolve these arguments.

Finally, based on its assertion that St. Paul cannot non-renew without providing the free tail coverage or reimbursing the doctors, Bethea asserts that if a contract provision allows St. Paul's action, it is invalid because it leads to absurd consequences. This argument is without merit. It is based on a faulty premise - that the policy allows St. Paul to "take the money and run" without providing any service. The policy clearly provides that in consideration for the premium, the policyholder receives an option to purchase tail coverage in the event of non-renewal, as well as the right to tail coverage at no additional premium if the policyholder retires while the policy remains in effect. If the conditions entitling a policyholder to the free tail coverage are not fulfilled, then the policyholder has no right to free tail coverage. This does not mean that the protection was

III

We turn next to the dismissal of Bethea's unjust enrichment claim. In Louisiana there are five requisite elements for a successful unjust enrichment claim:

> (1) there must be an enrichment, (2) there must be an impoverishment, (3) there must be a connection between the enrichment and resulting impoverishment, (4) there must be an absence of 'justification' or 'cause' for the enrichment and impoverishment, and finally (5) the action will only be allowed when there is no other remedy at law, i.e., the action is subsidiary or corrective in nature.[34]

"[I]f there is a contract between the parties it serves as a legal cause, an explanation, for the enrichment. '[O]nly the unjust enrichment for which there is no justification in law or contract allows equity a role in the adjudication.'"[35] We review the dismissal of Bethea's unjust enrichment claim de novo.[36]

---

not provided during the life of the policy. Even if St. Paul did not disclose what portion of the premium covered the cost of the tail coverage, St. Paul provided a service in exchange for the premium. As a result, refusing to provide free tail coverage or a reimbursement when St. Paul is not contractually bound to do so is not absurd.

[34] *Minyard v. Curtis Products, Inc.*, 205 So. 2d 422, 432 (La. 1968); *see also* LA. CIV. CODE ANN. art. 2055 (West 2004) ("Equity, as intended in the preceding articles, is based on the principles that no one is allowed to take unfair advantage of another and that no one is allowed to enrich himself unjustly at the expense of another.").

[35] *Edwards v. Conforto*, 636 So. 2d 901, 907 (La. 1993) (quoting *Edmonston v. A-Second Mortg. Co. of Slidell, Inc.*, 289 So. 2d 116, 122 (La. 1974)).

[36] *Manguno*, 276 F.3d at 725.

15

Bethea claims that St. Paul was enriched by receiving the higher premiums, and Bethea was impoverished by paying the higher fees without receiving the free tail coverage. Bethea asserts that there is no justification for the enrichment because the contract does not allow St. Paul to keep the premiums without providing free tail coverage. Finally, Bethea contends that there is no remedy at law available because the court dismissed its breach of contract claim.

In response, St. Paul first asserts that any alleged enrichment is justified by a valid contract governing the parties' relationship. Second, Bethea was not impoverished by paying the higher premium; the policy provided free tail coverage only if the policyholder died, became disabled, or retired during the life of the policy. Policyholders received the benefit of this protection even if the conditions were not realized. Finally, there is an adequate remedy at law because a valid contract exists.

Louisiana law provides that no unjust enrichment claim shall lie when the claim is based on a relationship that is controlled by an enforceable contract.[37] Given the valid contract defining Bethea's insurance coverage, Louisiana law bars Bethea's unjust enrichment claim.[38] The contract collected premiums for claims-made coverage as well as for tail coverage "for no additional premium"

---

[37] *Edwards*, 636 So. 2d at 907.

[38] *Id.*

16

if the policyholder retires during the life of the policy.

Bethea's only response is that the rule does not apply "where the contract does not speak to the specific conduct at issue," and alleges that the conduct here - charging higher premiums for tail coverage - is not authorized by the policy. Bethea's assertion that St. Paul secretly collected higher premiums while characterizing this tail coverage as "free" is specious. The policy makes clear that there is tail coverage upon the happening of certain conditions, and a reasonable policyholder would understand that any coverage an insurance company provides will be paid for in the premium.

## IV

We AFFIRM the judgment of the district court dismissing Bethea's claims with prejudice.

17